Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3944 | **DATE** | 10/17/2001 |
| **CASE TITLE** | Bolen vs. Bass | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [170] is denied. Defendant's motion for summary judgment [174] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | 3 number of notices | Document Number |
| X | Notices mailed by judge's staff. | | OCT 18 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| X | Mail AO 450 form. (Mailed by MD) | FILED FOR DOCKETING | docketing deputy initials | 191 |
| | Copy to judge/magistrate judge. | 01 OCT 17 PM 4: 18 | 10/17/2001 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE BOLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 97 C 3944 |
| v. | ) | |
| | ) | |
| BASS & ASSOCIATES, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie Bolen brings this second amended class action complaint individually and on behalf of others similarly situated alleging that defendant Bass & Associates, P.C. violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692e and 1692f, by seeking to collect debts discharged in bankruptcy pursuant to unenforceable reaffirmation agreements. Both parties presently move for summary judgment. For the reasons articulated below, the court grants Bass' motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving

party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

On January 23, 1997, Bolen, while represented by counsel, filed for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. Schedule D of Bolen's bankruptcy petition, which lists creditors holding secured claims, listed Best Buy/Beneficial National Bank USA ("Best Buy") as a creditor with security interests in a refrigerator, stove, and VCR, and additionally stated that these items possessed a "[purchase money security interest] market [value] of less than $1,670." (Bass App. G.) Prior to her bankruptcy filing, Bolen had regularly sent payments to Best Buy, and Bolen stated on her Chapter 7 statement of intention (filed in conjunction with her bankruptcy petition) that she intended to reaffirm her debt with Best Buy.

Bass is a law firm that primarily represents creditors in connection with collection matters and consumer bankruptcy proceedings. During the pendency of Bolen's bankruptcy case, Bass negotiated with Bolen's attorney, Joseph D. Bode, the execution of a reaffirmation agreement whereby Bolen would agree to reaffirm her otherwise dischargeable debt to Best Buy in

exchange for her retention of Best Buy's collateral.[1] Bass first sent a letter to Bode on February 22, 1997, inquiring as to Bolen's intentions regarding her debt to Best Buy and attaching a proposed reaffirmation agreement. On March 6, 1997, Bode contacted Bass and asked that Bass send him another agreement, which Bass did. On April 24, 1997, Bolen executed a document entitled "Reaffirmation Agreement," which provided that Bolen would reaffirm her debt to Best Buy and pay $42 monthly to Best Buy until her reaffirmed debt was paid in full. Bolen attested that she signed the reaffirmation agreement because she wanted to keep her refrigerator and stove. The agreement had originally proposed a $101 monthly payment, but either Bolen or Bode crossed out this figure and replaced it with a handwritten $42 amount before returning the agreement to Bass. The agreement also contains the § 524(c)-mandated statements regarding rescission and the attorney declaration, executed by Bode. Bass, which maintains a computerized system that records all phone calls, correspondence, and discharge dates, received the executed agreement on or about May 7, 1997, either the same day

---

[1] Section 524(c) of the Bankruptcy Code provides a mechanism by which debtors and creditors can enter into agreements where the consideration is based on a dischargeable debt so long as certain requirements are met. Specifically, the agreement (1) must be made before the debtor is granted a discharge; (2) must contain "a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of recission to the holder of such claim; (3) must contain " a clear and conspicuous statement which advises the debtor that such agreement is not required under [the Bankruptcy Code], under nonbankruptcy law, or under any agreement not in accordance with the provisions of" Bankruptcy Code § 524(c); and (4) "must be filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under" § 524(c) that states that the agreement "represents a fully informed and voluntary agreement by the debtor," "does not impose an undue hardship on the debtor or a dependant of the debtor," and that the debtor's "attorney fully advised the debtor of the legal consequences of" an agreement made under § 524(c) and any default thereunder.

or the day before Bolen received her bankruptcy discharge.[2] The reaffirmation was never filed with the bankruptcy court.

On May 23, 1997, Bolen sent $84 directly to Best Buy. On June 5, 1997, Bass sent Bolen a letter stating the minimum payment amount due ($42) and the payment's due date. This statement also included a detachable coupon with this same information, presumably to be sent to Best Buy with Bolen's payment. Bass sent no other statements to Bolen. Bolen testified that at some point she "requested that [she] could get some kind of a bill from them so [she] wouldn't have to try and remember to pay them every month, but [she] never got that." (Bass Ex. 4 at 27-28.) Moreover, Bolen contacted Bass to get its address for the purpose of sending in her payments. Bass received 13 checks from Bolen between June 5, 1997 and July 21, 1998 totaling $615, and from May, 1997 through at least April 18, 2000, Bolen kept and used the refrigerator and stove in which Best Buy had an enforceable purchase money security interest. When asked at her deposition how she was damaged by Bass' action, Bolen responded, "Not damaged. It's just that the – things are supposed to be done in the proper manner. If they're not done the way they're supposed to be done, then everybody is affected by that."[3]

---

[2] The court notes that Bass asserts that May 8 was Bolen's discharge date and Bolen inconsistently states in her summary judgment motion that May 7 was the discharge date but then uses the May 8 date in her response to Bolen's statement of material facts. Moreover, the court notes the docket cover sheet and discharge order submitted by the parties indicate May 7 as date of discharge, but that the docket entry for May 7 shows that although the filing date for discharge order was May 7, inexplicably the entry for that date reads "DISCHARGE of the Debtor with Certificate of Mailing Filed (13 copies) 5/8/97." (Bolen App. I.)

[3] The testimony continues:

Q. How were you affected?
A. It's annoying – not annoying – yes, it is annoying. You know, we're expected to follow certain rules when we do these things, but yet other people don't follow rules.

(Bolen Dep. at 29.) Bolen contends that she also testified that she has been damaged "because she was making

(continued...)

4

The parties agree that there are at least 94 persons (Bass contends that there are 104 class members) who similarly filed for Chapter 7 bankruptcy relief, executed a reaffirmation with Bass that was never filed, and, thereafter, received one or more letters from Bass requesting payment pursuant to the unfiled agreement. Moreover, it is undisputed that if a debtor was represented by counsel, Bass communicated exclusively with the debtor's attorney when negotiating reaffirmation agreements unless the attorney specifically directed otherwise. In addition, of the purported 104 class members, 59 returned reaffirmation agreements after their discharge and seven returned the agreements less than a week before discharge. There is no evidence that Bass confirmed to any class member that it had filed a reaffirmation agreement that had not actually been filed, but Bass does not dispute that it contacted or attempted to contact 19 class members by phone. Bolen asserts that Bass contacted these class members to obtain payments pursuant to unenforceable reaffirmation agreements, and Bass claims that calls were made either to return the class member's call or "to inquire as to the class member's intent with respect to their arrangement with Bass when circumstances changed." (Bass Resp. to Pl.'s Additional Fact Statement ¶ 3.) Bass also asserts that it treated individuals who were subject to enforceable reaffirmation agreements differently from those who were not by, for example, avoiding any reference to personal liability, referring to some unenforceable reaffirmation agreements as "informal" agreements, and viewing the unenforceable agreements as the individual's intent to voluntarily repay their discharged obligation.

---

[3](...continued)
payments she shouldn't have been making," Pl.'s Resp. to Bass' Additional fact statement ¶ 33, but failed to submit to the court the deposition testimony purportedly supporting this contention.

5

## DISCUSSION

There is no dispute that had Bolen's reaffirmation agreement been properly filed with the bankruptcy court, it would have been enforceable. Bolen's contention is that since the agreement was unenforceable, by virtue of Bass' failure to file it with the bankruptcy court, Bass violated the FDCPA by sending its "reminder letter" to Bolen, in that this letter was an attempt to collect a discharged debt.[4] Among other arguments, Bass asserts that this court lacks jurisdiction to adjudicate the complaint's allegations and that the proper place to litigate Bolen's claim is in the bankruptcy court, citing, among other cases, the recent Seventh Circuit case of *Cox v. Zale Delaware, Inc.*, 239 F.3d 910 (7th Cir. 2001), in support.

In *Cox*, a debtor who signed a reaffirmation agreement that was never filed and paid the balance of a discharged debt while retaining a creditor's collateral brought a class action suit seeking to rescind the agreement and recover amounts paid to the creditor after entry of the debtor's and other class members' discharge. The bankruptcy court, to whom the case had been referred, ruled that § 524(c) did not create a private right of action for violation of the

---

[4]Bolen's summary judgment motion asserts that Bass' actions violated the following FDCPA sections:

§ 1692e. False or misleading representations
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
* * * *
(2) The false representation of–
    (A) the character, amount, or legal status of any debt . . . .
* * * *
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

§ 1692f. Unfair practices
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

6

requirement that a reaffirmation agreement, to be enforceable, must be filed with the bankruptcy court. Although the Seventh Circuit found emphasis on the concept of private right of action "misplaced,"[5] it agreed with the bankruptcy court that because "remedies against debt-affirmation agreements contended to violate the Bankruptcy Code are a matter exclusively of federal bankruptcy law," plaintiff's claim for unjust enrichment, which was based on state law, was extinguished. *Id.* at 913. The Seventh Circuit then examined whether § 524(a)(2)'s remedy for violations of § 524's discharge injunction–namely, contempt sanctions–was an exclusive remedy or whether a debtor can also sue to rescind the unfiled reaffirmation agreement. When deciding this question, the Seventh Circuit found not only that the debtor had stated a "technical, trivial, and arguably, indeed, condoned [violation of § 524(c)] and hence no violation at all," but also that "Cox's suit for rescission [was] . . . both a frivolous suit and a nuisance suit – frivolous because the payments that Cox [sought] to recoup were made voluntarily, a nuisance suit because its net expected value to Cox negative" since the rental value of the collateral that Cox retained was higher than the amount he sought to recoup through rescission. *Id.* at 915 & 916. The court then concluded that "[i]n the unlikely event that [the creditor] really [had] committed a deliberate, indeed a flagrant, breach of the filing requirement," *id.* at 916, the debtor could ask

---

[5]The court explained,

> The private rights of action that the [Supreme] Court is reluctant to read into federal statutes are rights to obtain damages for statutory violations remediable by public agencies. Cox is not seeking damages, and section 524(c) is enforceable only by private parties. A statute regulating purely private rights that makes a contract void makes the contract rescindable by a party to it, especially when the other party to the contract is trying to enforce it, so that the contract's illegality is interposed by way of defense, rather than as the basis for an independent suit.

239 F.3d at 913-14.

7

the bankruptcy court to hold the creditor in contempt and, ultimately, that § 524's contempt remedy made the most sense. The court stated:

> The remedy authorized by section 524(a)(2) has the advantage of placing responsibility for enforcing the discharge order in the court that issued it. That makes more sense than a suit seeking more limited relief (a suit for rescission would not entitle the successful plaintiff to attorneys' fees or punitive damages), which could be filed in any federal district in which Cox could serve Zale. The court that issued the discharge order is in a better position to adjudicate the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy. In the context of debt reaffirmation agreements, the rescission remedy is, for the reasons we've explained, hokey.

*Id.* (citations omitted).

Although *Cox* may indeed resolve this case, we will look at whether, because an FDPCA suit is a federal statutory remedy, this case presents any basis to distinguish *Cox* based on the principle that the courts should endeavor to harmonize two federal statutes, and if they cannot be harmonized, decide which should take precedence. *See Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, No. 98 C 4280, 1999 WL 284788, at *3 (N.D. Ill. Apr. 26, 1999) (quoting *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 583-84 (7th Cir. 1999) ("The Seventh Circuit has recently made clear that '[t]he choice between two federal statues requires an analysis of both, to see if they are indeed incompatible or if they can be harmonized, and if they are incompatible to decide which one Congress meant to take precedence.")). Two judges in this district have already concluded (one opinion was issued before *Cox*) that the FDCPA and § 524(c) can be harmonized. *See Peeples v. Blatt*, No. 00 C 7028, 2001 WL 921731 (N.D. Ill. Aug. 15, 2001), *and Wagner v. Ocwen Fed. Bank, FSB*, No. 99 C 5404, 2000 WL 1382222 (N.D. Ill. Aug. 28, 2001) (both citing *U.S. v. Palumbo Bros., Inc.*, 145 F.3d 850, 862 (7th Cir. 1998)). But in light of the direct holding in *Cox* "that a suit for violation of section 524(c) can be brought

8

only as a contempt action under section 524(a)(2)," *id.* at 917 (emphasis added), and the reasoning of Judge Coar in *Baldwin*, this court disagrees with *Peeples* and *Wagner* on this issue. In *Baldwin*, the court ruled that an FDCPA claim cannot be premised upon the filing of proofs of claim in a bankruptcy proceeding, reasoning that application of the FDCPA to bankruptcy proofs of claim would be inconsistent with prior bankruptcy practice and would interfere with the Bankruptcy Code's comprehensive bankruptcy scheme by deterring creditors from filing claims and prompting debtors to ignore the procedural safeguards within the Bankruptcy Code. Similarly here, creditors may be deterred from protecting their rights under 524(c) for fear of law suits and debtors may be inclined to disregard their obligations once they have agreed to reaffirm a debt. *Peeples* distinguished *Baldwin* on the basis that the Bankruptcy Code violation took place while the bankruptcy was still pending, but that does not distinguish *Cox*, which concerned a reopened bankruptcy proceeding. This court concludes that the Seventh Circuit's *Cox* decision, which explicitly addresses remedies for alleged violations of § 524(c), prevents Bolen from proceeding under the FDCPA for a violation of Bankruptcy Code § 524(c). Her exclusive remedy is to seek contempt sanctions for violation of § 524's discharge injunction.

## CONCLUSION

For the above-stated reasons, the court denies Bolen's summary judgment motion [#170] and grants Bass's summary judgment motion [#174].

Date: October 17, 2001

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

9